**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**FILED
DEC 0 8 2005
CLERK, U.S. BANKRUPTCY
ORLANDO DIVISION**

In re:

ANITA MORSE-PINKSTONE,

    Debtor.
_____/

JOANNE ROSSI, a/k/a JOANNE
YASONI,

    Plaintiff,

vs.

ANITA MORSE-PINKSTONE,

    Defendant.
_____/

Case No. 6:04-bk-13546-ABB
Chapter 7

Adv. Pro. No. 6:05-ap-00016-ABB

## MEMORANDUM OPINION

This adversary proceeding came before the Court on the Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §523(a)[1] filed by the Plaintiff Joanne Rossi, a/k/a Joanne Yasoni ("Plaintiff"), against Anita Morse-Pinkstone, the Defendant and Debtor herein ("Debtor"). This is an action to determine the dischargeability of a debt pursuant to 11 U.S.C. §§523(a)(2)(A) and 523(a)(6). A trial was held on August 26, 2005. Appearing at trial were the Plaintiff, the Debtor, and counsel for each party. After reviewing the pleadings and evidence, and hearing live testimony and argument, being otherwise fully advised in the premises, the Court finds the debt should be excepted from the Debtor's discharge. Judgment will be entered for the Plaintiff.

The following Findings of Fact and Conclusions of Law are made:

## **FINDINGS OF FACT**

The Plaintiff loaned $10,000 to the Debtor on March 31, 2003.[2] The Debtor and the Plaintiff signed a promissory note on that same date, which provides that the loan was due within six months with interest accruing at the rate of 8%.[3] The parties had business dealings together and had taken steps to open a travel business. The Debtor made no loan payments to the Plaintiff. The Plaintiff obtained a state court judgment against the Debtor in the amount of $11,400.56[4] and then instituted collection proceedings. The Plaintiff garnished $3,373.91 from the Debtor pre-petition. The Debtor filed a Chapter 7 bankruptcy case on December 17, 2004.

The parties exchanged email communications regarding the loan. In response to an email from the Plaintiff the Debtor wrote: "there was no way that I intend to pay you back . . . You were a perfect sucker for a scam artest like me . . . Best of luck trying to find me . . . ."[5] In another email the Debtor wrote: "i told you lawyer and you i would never pay you that i would go bankrupt first. who gets to laugh now? me!"[6]

The parties presented conflicting testimony regarding the purpose of the loan and how the funds were to be used by the Debtor. The Plaintiff testified she had understood the Debtor was trying to buy a house and the loan was to be used as a down payment. The Debtor did not purchase a home. The Debtor testified that the loan was a business loan for their co-venture and the funds were used for business start-up costs. She further testified that she had credit card statements and other bank documents evidencing that the funds were used for business purposes. The trial record remained open for fourteen days to allow the Debtor to produce evidence of the

---

[1] Doc. No. 1.
[2] Plaintiff's Exh. No.2.
[3] Plaintiff's Exh. No. 1.
[4] Plaintiff's Exh. No. 3.
[5] Plaintiff's Exh. No. 4.

disbursements of the loan proceeds. The Debtor did not produce evidence supporting her testimony on the use of the funds. Based on the Debtor's failure to present any additional evidence, her credibility is discounted.

The Plaintiff loaned $10,000 to the Debtor with the understanding, based upon the Debtor's representations, that the funds were to be used by the Debtor to purchase a home and would be repaid pursuant to the terms of the note. The Plaintiff relied upon the Debtor's representations and her reliance was justified. These representations were false and were made by the Debtor with the purpose and intent to deceive the Plaintiff. The email communications establish that at the time the loan was made the Debtor did not intend to use the loan for the stated purpose or to repay the funds. Signing the promissory note was part of the Debtor's scheme to garner the Plaintiff's trust and defraud her. The Plaintiff sustained a loss as a direct result of the Debtor's misrepresentations.

The Debtor deliberately and intentionally injured the Plaintiff through her willful and malicious acts. The Debtor, harboring an intent to deceive the Plaintiff at the time the loan was made, deliberately and intentionally defrauded the Plaintiff. She intended to deprive the Plaintiff of $10,000 and did in fact cause the Plaintiff to lose $10,000. The actions of the Debtor were willful and malicious. The Plaintiff has satisfied the requirements to sustain a claim of nondischargeability pursuant to both 11 U.S.C. §§523(a)(2)(A) and 523(a)(6).

## CONCLUSIONS OF LAW

The Plaintiff challenges the dischargeability of the debt pursuant to §§523(a)(2)(A) and 523(a)(6). The party objecting to the dischargeability of a debt carries the burden of proof, and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291,

---

[6] Plaintiff's Exh. No. 5.

111 S. Ct. 654, 112 L. Ed.2d 755 (1991); Fed. R. Bankr. P. 4005 (2005). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. In re Hunter, 780 F.2d 1577, 1579 (11th Cir. 1986); In re Bernard, 152 B.R. 1016, 1017 (Bankr. S.D. Fla. 1993).

### *11 U.S.C. §523(a)(2)(A)*

The Plaintiff contends the debt should be excepted from discharge pursuant to §523(a)(2)(A) of the Bankruptcy Code, which provides that a discharge pursuant to §727 does not discharge an individual from any debt:

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. §523(a)(2)(A). Courts have required a plaintiff to establish the traditional elements of common law fraud for non-dischargeability pursuant to §523(a)(2)(A). SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998). A plaintiff must prove: (i) the debtor made a false representation with the purpose and intent to deceive the creditor; (ii) the creditor relied on the misrepresentation; (iii) the reliance was justified; and (iv) the creditor sustained a loss as a result of the misrepresentation. Id.; In re Johannessen, 76 F.3d 347, 350 (11th Cir. 1996). Pursuant to the Grogan decision, the objecting party must prove each of the four elements of fraud by a preponderance of the evidence. In re Wiggins, 205 B.R. 131, 134 (Bankr. M.D. Fla. 2000).

Regarding the first element, the false representation giving rise to the claim must have been knowingly and fraudulently made to except a debt from discharge. 4 COLLIER ON BANKRUPTCY ¶523.08[1][d], at 523-44.9. The party objecting to discharge must then establish

that it relied on the false representation. Id.; City Bank & Trust Co. v. Vann, (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995); In re Perkins, 52 B.R. 355, 357 (Bankr. M.D. Fla. 1985). The reliance must be justified. Field v. Mans, 516 U.S. 59, 73-5, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995) (establishing that §523(a)(2)(A) requires justifiable reliance rather than the former standard of reasonable reliance). Whether such reliance was justified is determined by a subjective test. In re Vann, 67 F.3d at 281. "Justifiable reliance is gauged by an *individual standard* of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." Id. (quoting W. PAGE KEETON, PROSSER & KEETON ON TORTS §108, at 751 (5th ed. 1984) (emphasis added)). The fourth element requires proof of causation. A plaintiff must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. Fugate v. Stevens, No. 02-8501-8G7, Adv. No. 8:02-ap-589-PMG, 2003 Bankr. LEXIS 1950, at 18-9 (Bankr. M.D. Fla. September 12, 2003).

The Plaintiff has established each of the four fraud elements by a preponderance of the evidence. The Plaintiff loaned $10,000 to the Debtor believing that the funds would be used to purchase a house and would be repaid pursuant to the terms of the note, as represented to her by the Debtor. The Plaintiff loaned the money to the Debtor relying on the Debtor's representations. The Plaintiff's reliance on the Debtor's representations was justified. Had the Plaintiff known the Debtor's true intentions, she would never have made the loan.

The Debtor's representations to the Plaintiff were false. The Debtor did not intend to use the funds to purchase a house and did not intend to repay the money. The Debtor's own words, "there was no way that I intend to pay you back . . . You were a perfect sucker for a scam artest

[sic] like me," evidence, particularly through the use of past tense verbs, her intent to defraud the Plaintiff at the time the loan was made. The Debtor intended to deprive the Plaintiff of $10,000 and the Plaintiff suffered an injury, the loss of $10,000, as a direct result of the Debtor's misrepresentations.

## *11 U.S.C. §523(a)(6)*

The Plaintiff asserts the debt is non-dischargeable pursuant to 11 U.S.C. §523(a)(6). Section 523(a)(6) provides that a discharge pursuant to §727 does not discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6). The exception of a debt from discharge pursuant to §523(a)(6) requires that a plaintiff prove by a preponderance of the evidence that the debtor deliberately and intentionally injured the creditor or creditor's property by a willful and malicious act. In re Howard, 261 B.R. 513, 520 (Bankr. M.D. Fla. 2001).

The United States Supreme Court ruled in Kawaauhau v. Geiger that in order to establish the requisite willful and malicious intent of §523(a)(6) a plaintiff must prove the injury was intentional—that the debtor intended the consequences of his act. The Supreme Court explained that because "willful" modifies "injury" in §523(a)(6), nondischargeability requires conduct that inflicts an injury intentionally and deliberately, "not merely . . . a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61-2, 118A S. Ct. 974, 140 L. Ed. 2d 90 (1998). "Malicious" has been defined by the Eleventh Circuit as "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." In re Ikner, 883 F.2d 986, 991 (11th Cir. 1989). Malice may be implied or constructive. In re Walker, 48 F.3d 1161,

1164 (11th Cir. 1995). Conduct that is reckless or willfully ignorant does not constitute malicious and willful pursuant to the Geiger standard.[7]

The Plaintiff contends that the Debtor's taking of the $10,000 and failure to repay the funds constitute willful and malicious injury to the Plaintiff. The Plaintiff has established that the Debtor's actions meet the willful and malicious standard of §523(a)(6), as defined by the Supreme Court in Geiger. The Debtor fraudulently obtained the funds from the Plaintiff through deceit. Her actions were not reckless or willfully ignorant. They were deliberate and intentional. The Debtor had an actual conscious intent to harm the Plaintiff when the loan was made. She intended to injure the Plaintiff by taking $10,000 from her through deceit. Such intent is evidenced by the Debtor's email statements: "there was no way that I intend [sic] to pay you back" and "You were a perfect sucker for a scam artest [sic] like me."[8] The Plaintiff suffered the intended injury—she lost $10,000. The Debtor's actions were willful and malicious within the meaning of 11 U.S.C. §523(a)(6).

The Plaintiff has established the non-dischargeability elements of 11 U.S.C. §§523(a)(2)(A) and 523(a)(6). Judgment will be entered in favor of the Plaintiff.

The Court will enter a separate judgment consistent with these findings of fact and conclusions of law.

Dated this 6th day of December, 2005.

ARTHUR B. BRISKMAN
United States Bankruptcy Court

---

[7] "Willful" conduct requires "a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another." In re Ikner, 883 F.2d at 991; see also In re Walker, 48 F.3d at 1165 (explaining that the "reckless disregard" standard was rejected by Congress and the 11th Circuit).
[8] Plaintiff's Exh. No. 4.

7